IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2015 Session

## GREGORY GENE SPICELAND v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Stewart County**
**No. 4-2011-CR-09    Robert E. Burch, Judge**

_____

**No. M2014-01833-CCA-R3-PC – Filed October 9, 2015**

_____

The petitioner, Gregory Gene Spiceland, appeals the denial of post-conviction relief from his 2011 Stewart County Circuit Court jury convictions of initiating the process to manufacture methamphetamine and promotion of methamphetamine manufacture, claiming that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Cleveland C. Turner, Clarksville, Tennessee, for the appellant, Gregory Gene Spiceland.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Sarah Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Stewart County Circuit Court jury convicted the petitioner of one count each of initiating the process to manufacture methamphetamine and promotion of methamphetamine manufacture. The trial court imposed a total effective sentence of eight years in split confinement, ordering the petitioner to serve one year in incarceration and the remainder of the sentence on probation. On appeal, this court determined that the trial court abused its discretion "by ordering [the petitioner] to serve a full year of his sentence by incarceration" and modified the petitioner's sentence to service of 30 days in confinement followed by probation for the balance of his sentence. *See State v. Gregory G. Spiceland*, No. M2011-01196-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, Feb. 15, 2013).

In *Gregory G. Spiceland*, this court summarized the facts of the case as follows:

> Drug task force agent Scott Templon testified that on April 10, 2008, he conducted a controlled buy through a confidential informant ("CI"). Agent Templon testified that the CI was compensated $100 for each controlled buy and that he had been working as a CI for approximately five years. The CI was provided with a recording device and $40.00 to purchase one-half gram of methamphetamine from [the petitioner]. Agent Templon searched the CI's person and vehicle for weapons, cash or contraband and found none. Agent Templon followed the CI to the area of the 49 Market in Stewart County. Agent Templon observed the CI pull into [the petitioner's] driveway off Long Creek Road. Agent Templon later met with the CI, who stated that he had purchased methamphetamine from Gary Osborne. The substance, which later tested to be 0.2 grams of methamphetamine, was packaged in foil. Agent Templon testified that the audio recording of the transaction, which was played for the jury, indicated that Mr. Osborne brought [the petitioner] "several baggies containing powder in them or residue [which] was at the final stage of methamphetamine production."
>
> Agent Templon testified that the CI had been to [the petitioner's] residence on two prior occasions, but those did not result in purchases and that the CI had not been provided any money with which to purchase drugs on those occasions. On cross-examination, Agent Templon acknowledged that the substance could have come "straight from Osborne without [the petitioner's] even having any contact" with it. He also acknowledged that [the petitioner] had never been previously convicted of any drug offenses. He testified that [the petitioner] was targeted because law enforcement "had received numerous reports from citizens." He testified that he and Agent Crawley "received numerous complaints from citizens of large amounts of traffic in and out of [the petitioner's] residence, odors coming from the farm area, chemical odors."

The CI testified that after he arrived at [the petitioner's] residence, they talked outside [the petitioner's] house about cars and car parts while they waited for Gary Osborne to arrive. After Osborne arrived, they went inside the house, and [the petitioner] and Osborne were cooking methamphetamine in the microwave. The CI testified that [the petitioner] and Osborne poured a liquid onto plates and placed them in the microwave and then scraped a powdery residue from the plates onto foil or cellophane. The CI went outside to get rolling papers. He testified that he wanted to go outside because he was afraid of a possible explosion. He rolled a cigarette with the rolling papers "so it looked like a joint." [The petitioner] came outside "to get [the CI] to come downstairs to smoke with them." The CI refused and started his car as if he "was getting ready to go ahead and leave." He testified that [the petitioner] and Osborne came outside again, and Osborne sold the CI the methamphetamine while [the petitioner] stood "just on the other side [of the CI's vehicle] watching." The CI testified that he had been to [the petitioner's] residence on two or three prior occasions and that he had not purchased drugs on those occasions. He testified "[the petitioner] always made promises that never came true."

Agent Brett Trotter, a forensic scientist with the Tennessee Bureau of Investigation, testified that he analyzed the substance obtained from the CI, and concluded that it was 0.2 grams of a substance containing methamphetamine.

[The petitioner] testified that the CI "just showed up at the farm one day" while [the petitioner] was "working on something." He testified that the CI "acted sort of odd." He testified that the CI was "just talking about his buddies [and] drugs. . . ." He testified that on the date of the incident, "Osborne came in with a white substance already in some bagges [sic] – white powdery substance" and that Osborne told [the petitioner] to "go along with me on this." [The petitioner] believed that Osborne was making something that would give the CI diarrhea. [The petitioner] denied knowing that the substance was methamphetamine. [The petitioner]

- 3 -

testified that he suspected that the CI's vehicle was stolen, and he asked the CI to "come in and smoke something" in order to "get him away from his truck" so [the petitioner] could get the serial numbers of the CI's truck. [The petitioner] denied any involvement in the production or sale of methamphetamine.

*Id.*, slip op. at 2-3.

On February 13, 2014, the petitioner filed a timely petition for post-conviction relief. Following the amendment of the petition, the post-conviction court held an evidentiary hearing on June 30, 2014.

The petitioner testified that, during voir dire, he told trial counsel "several" times that he had "fathered a baby by" the daughter of one of the potential jurors and that the potential juror "highly . . . disliked" him. The petitioner stated that he also told trial counsel that another potential juror "had had a big run in" with the petitioner's sister-in-law. The petitioner testified that trial counsel used all of his peremptory challenges and that counsel told him that he "already had the couple down that he wanted to pull off right then and that's what [counsel] went with." Both potential jurors were seated on the jury, and the man with whom the petitioner had concerns became the jury foreperson.

The petitioner also expressed concern to trial counsel that one of the jurors had spoken with the prosecutor during a recess in the trial. Trial counsel told the petitioner that "he didn't think it would have any bearing on the case" and did nothing about it.

The petitioner testified that trial counsel had discussed an entrapment defense with him and that he was "taking care of" filing the appropriate motions. When the jury was retiring to deliberate, trial counsel "said something to Judge Burch about something on entrapment and [the judge] said write something out." According to the petitioner, trial counsel did "wr[i]te something out," but the trial court instructed him that it "was too late to act at that time" and that "[i]t should have been turned in earlier."

The petitioner discussed the importance of calling Billy Jackson, a logger, as a witness at his trial. The petitioner testified that, if Mr. Jackson had testified at trial, he would have stated that the confidential informant had smoked marijuana while standing in the petitioner's driveway on the date of the controlled buy. The petitioner provided trial counsel with $35 to cover the cost of issuing a subpoena to Mr. Jackson, but Mr. Jackson did not appear at the trial to testify.

With respect to potential expert witness testimony, the petitioner stated that he offered to contact "somebody that had been prosecuted for manufacturing [methamphetamine] to come in and show" that the activities in the petitioner's residence "had nothing to do with manufacturing." The petitioner also accused trial counsel of being an alcoholic and claimed that counsel did not discuss the fact that the presentment issued in his case was signed by only 11 grand jurors.

On cross-examination, the petitioner admitted that he had met with trial counsel several times prior to trial and that trial counsel had discussed trial strategy with him.

The State admitted into evidence the deposition testimony, taken on June 20, 2014, of trial counsel, who had moved out of state. Trial counsel testified that the petitioner had hired him in the underlying case and that he had discussed trial strategy with the petitioner "[m]any times." The petitioner chose to testify at trial and denied all allegations against him. Trial counsel reviewed all of the discovery materials with the petitioner, which materials included audio recordings. Trial counsel stated that he communicated all plea offers to the petitioner but that the petitioner rejected all offers.

With respect to the list of potential jurors, trial counsel received the list prior to trial and consulted with the petitioner about the names on the list. Trial counsel testified that he "incorporated [the petitioner's] input" during voir dire. Trial counsel did not recall with any specificity a juror who the petitioner identified as the grandparent of his child. Trial counsel recalled that a male juror had inquired about the prosecutor's pregnancy; that the prosecutor had notified the trial court and trial counsel; that the trial court "made a reasonable inquiry"; and that the trial court found no basis to disqualify the juror or declare a mistrial. According to trial counsel, the petitioner made no objection to this decision or expressed any concern until after the verdict was announced.

Trial counsel testified that he considered the possibility of multiplicity in the drug charges the petitioner was facing but determined that there was no "effective legal basis" to assert a defense of multiplicity. Trial counsel also believed that a jury charge on entrapment was not warranted by the facts and circumstances of the petitioner's case. Trial counsel recalled that he subpoenaed one witness who failed to appear. Trial counsel asked the petitioner if he wished to bring the matter to the court's attention and "have the person brought in," but the petitioner declined. When he filed the motion for new trial, trial counsel included an affidavit stating the facts to which he believed the witness would have testified. Trial counsel contacted the petitioner's co-defendant in the underlying case in an attempt to interview him, but the co-defendant's attorney denied all access.

With respect to the petitioner's interest in speaking with "a multiple-convicted meth offender," trial counsel recalled that he informed the petitioner that calling such a person as a witness "would have likely only damaged the [petitioner's] cause, as he could easily be portrayed as consorting personally with a person who was manufacturing methamphetamine and had experience in manufacturing methamphetamine." To the best of his recollection, trial counsel stated that, after expressing his concerns to the petitioner, the petitioner and trial counsel "agreed that it would be best not to call that person as a witness."

Trial counsel denied telling the petitioner that his case would be dismissed, stating that it was his practice to simply advise each client of the minimum and maximum penalties and potential courses of action. Trial counsel also denied ever appearing in court on the petitioner's behalf while under the influence of alcohol.

When trial counsel opened his own law practice in July 2010, he sent letters to all of his clients, notifying them of his change of address. Trial counsel testified that, although his street address changed, his telephone number and electronic mail address remained the same after the move. Trial counsel stated that the petitioner had one scheduled court appearance at which counsel knew he would be unavailable, so trial counsel arranged for another attorney to attend the pretrial hearing and informed her about the case.

The post-conviction court made extensive findings of fact and conclusions of law in its 49-page, July 22, 2014 memorandum opinion denying post-conviction relief, addressing each of the petitioner's 34 allegations of ineffective assistance of counsel. The post-conviction court found no merit to any of the petitioner's claims and found that the petitioner had failed to prove his allegations by clear and convincing evidence.

On appeal, the petitioner reiterates his claims of ineffective assistance of counsel, reducing the number of allegations from 34 to 20. The State counters that the post-conviction court properly denied relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn.

Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

A claim of ineffective assistance of counsel, specifically, is a mixed question of law and fact. *See Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001. When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick*, 454 S.W.3d at 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Of the petitioner's 20 issues on appeal, 16 are devoid of citation to authorities or appropriate references to the record, and many of those issues consist of

single sentences or short paragraphs containing only conclusory statements. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Ct. Crim. App. 10(b); *see also* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on"). Because the petitioner failed to comply with these rules, he has waived our consideration of the following issues: his counsel's failure to challenge a juror who spoke to the prosecutor during trial; failure to give notice of an entrapment defense; failure to subpoena a material witness; failure to speak with petitioner's co-defendant or seek the services of a methamphetamine expert; failure to raise the defense of entrapment prior to trial; failure to question the elements of the indictment with the State's expert; failure to obtain a copy of the trial transcript to prepare for the motion for new trial; failure to adequately communicate with the petitioner; failure to prepare additional jury charges; failure to present an adequate closing argument; failure to prepare for trial; failure to advise the petitioner of trial counsel's employment history; failure to notify the petitioner of court appearances; failure to advise the petitioner of trial counsel's change of address; and failure to advise the petitioner of trial counsel's alleged alcoholism as well as counsel's ineffectiveness due to alleged alcohol abuse. We will, however, address the four remaining issues which, though sparsely expressed, are supported by citation to authorities.

*I. Failure to Seek Removal of Juror*

The petitioner first contends that trial counsel was ineffective for failing to seek removal of a juror who was prejudiced against the petitioner. Specifically, the petitioner claims that he informed trial counsel that a female juror was the mother of a woman whom the petitioner had impregnated but that trial counsel failed to challenge the inclusion of this woman on the jury. Although trial counsel testified that he "incorporated [the petitioner's] input" during voir dire, he could not recall the petitioner's identifying an issue with a juror who was the grandparent of his child.

The petitioner failed to present the juror at issue at the evidentiary hearing. As such, we cannot speculate whether the juror was actually prejudiced against the petitioner at trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."); *Ellis Junior Burnett v. State*, No. M2007-00572-CCA-R3-PC, slip op. at 9 (Tenn. Crim. App., Nashville, Feb. 29, 2008) (holding that failure to produce allegedly biased juror to testify at evidentiary hearing prevented "substantiation of the [p]etitioner's claim" and thus petitioner failed to prove prejudice). We therefore

hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

## II. Failure to Challenge Presentment for Double Jeopardy and Multiplicity

The petitioner next contends that trial counsel was ineffective by failing to challenge the presentment on grounds of double jeopardy and multiplicity, claiming that the charged offenses of initiating the process to manufacture methamphetamine and promotion of methamphetamine manufacture "occurred out of one act" and therefore violated double jeopardy principles. We disagree.

In 2012, our supreme court adopted the *Blockburger* "same elements" test to determine "whether separate convictions under different statutes constitute the same offense and violate the double jeopardy protection against imposing multiple punishments." *State v. Watkins*, 362 S.W.3d 530, 538-39, 556 (Tenn. 2012) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). However, because the petitioner was charged in 2009, the *Denton* test was still in effect in Tennessee for the analysis of double jeopardy issues. *See State v. Denton*, 938 S.W.2d 373, 381 (Tenn. 1996), *abrogated by Watkins*, 362 S.W.3d at 556. The four-step *Denton* test required a determination of whether the offenses at issue contained different elements; whether the same evidence was used to prove both offenses; whether there were multiple victims or discrete acts; and whether the purposes of the respective statutes differed. *Denton*, 938 S.W.2d at 381. In fashioning this test, the court cautioned that none of the steps were determinative and "the results of each must be weighed and considered in relation to each other." *Id.*

In applying the *Denton* analysis, the post-conviction court found that "both crimes contain different elements (one involves direct action by the accused while the other involves furnishing a facility for another to perform the direct action)"; that "the same evidence [was] not used to prove both offenses"; one of the crimes was "not a lesser included offense of the other"; the two crimes "did not involve multiple victims but did involve discrete acts"; and that the purposes of the two statutes were different. The post-conviction court thus concluded that there was no double jeopardy violation under *Denton*. The court then proceeded to examine the charges to determine whether the petitioner received multiple punishments for the same offense, as proscribed by *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996), and the court determined that the petitioner's charges were not multiplicitous.

We find the post-conviction court's reasoning sound, and we conclude that the petitioner has failed to establish that trial counsel was ineffective in this regard.

*III. Failure to Seek Entrapment Instruction*

Next, the petitioner asserts that trial counsel was ineffective by failing to prepare an appropriate jury instruction for the defense of entrapment. The petitioner contends that trial counsel's failure to prepare an instruction in advance and attempt to "hastily" write an instruction just prior to jury deliberation – which instruction was then disallowed by the trial court – inured to his prejudice.

The post-conviction court determined that an entrapment defense was not warranted under the facts of the case because "[t]he evidence against [the petitioner] was overwhelming, as the audio recordings of the transactions showed a clear predilection to commit the crimes, and the testimony supporting the defense was relatively weak and clearly self-serving." As such, the court concluded that trial counsel could not "be held to have been ineffective in failing to request a jury instruction on a defense which is not supported by the facts." Again, the record supports the post-conviction court's reasoning, and we find no merit to this claim.

*IV. Failure to Challenge Sufficiency of Presentment*

Finally, the petitioner contends that trial counsel was ineffective for failing to contest the presentment on the grounds that it was only signed by 11 jurors. The petitioner bases his claim on the belief that the signature of the grand jury foreman as the twelfth juror was insufficient to validate the presentment. *See* T.C.A. § 40-13-105 (specifying that an indictment requires the concurrence of at least 12 grand jurors).

Among the duties of a grand jury foreperson is the duty "to vote with the grand jury, which vote counts toward the twelve necessary for the return of an indictment." Tenn. R. Crim. P. 6(g)(4)(D). It is well-established that the grand jury foreperson "has the same voting power as any other grand jury member." *State v. Mangrum*, 403 S.W.3d 152, 163 (Tenn. 2013) (citing *State v. Bondurant*, 4 S.W.3d 662, 674-75 (Tenn. 1999) (quoting *State v. Jefferson*, 769 S.W.2d 875, 877-78 (Tenn. Crim. App. 1988))). In the instant case, the presentment was unquestionably signed by 11 grand jurors plus the grand jury foreman. Because the presentment was clearly valid, no grounds existed for trial counsel to challenge its validity, and, as such, the petitioner failed to prove that trial counsel was ineffective.

*Conclusion*

The petitioner has failed to prove by clear and convincing evidence that trial counsel's performance was deficient or prejudicial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE